UNITED STATES of America, Appellee,

v.

Robert V. JONES, Jr.; James G. Mallas; Trinity Properties, Inc.; Genesis Leases, Inc.; Omega Energy, Inc.; Revel, Inc., Appellants.

(In Re Grand Jury Subpoenas directed to R. Craig Miller, Jr., P. Peyton Warley, Stephen H. Morris and Custodian of Records, Bailey, Brackett & Brackett.)

No. 82–5209.

United States Court of Appeals, Fourth Circuit.

Argued Sept. 17, 1982.

Decided Dec. 14, 1982.

---

Douglas M. Martin, Charlotte, N.C. (Walker, Palmer & Miller, P.A., Charlotte, N.C., Arthur P. Tranakos, Atlanta, Ga., on brief), for appellants.

James P. Springer, Tax Div., Dept. of Justice, Washington, D.C. (Charles R. Brewer, U.S. Atty., Asheville, N.C., Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Robert E. Lindsay, Tax Div., Dept. of Justice, Washington, D.C., on brief), for appellee.

Before HAYNSWORTH, Senior Circuit Judge, and SPROUSE and CHAPMAN, Circuit Judges.

PER CURIAM:

This case is an appeal from an order of the district court denying a joint motion to quash four grand jury subpoenas issued to three individual attorneys and to the custodian of the records of a law firm. The attorneys' clients who are targets of the grand jury investigation intervened and moved to quash the subpoenas.[1] The clients, Robert V. Jones, Jr.; James G. Mallas; Trinity Properties, Inc.; Genesis Leases, Inc.; Omega Energy, Inc. and Revel, Inc. are the appellants. They contend that the subpoenaed communications are protected by the attorney-client privilege. The grand jury has been investigating the appellants for possible criminal activity in promoting and selling a tax shelter scheme.

---

1. Neither the attorneys nor the law firm have resisted the subpoenas.

The appellants had consulted with the attorneys at various times, obtaining written legal opinions as to the federal income tax consequences flowing from the purchases of coal leases. The appellants included portions of the attorneys' letter opinions in brochures and other promotional printed material, which they distributed to third parties beginning in 1977 and continuing thereafter.

The subpoenas *duces tecum* issued to two of the attorneys and to the custodian commanded production of the following documents:

all records relating to opinions rendered to Trinity Properties, Inc., 5821 Park Rd., Charlotte, N.C., dated November 3, 1978, September 17, 1979 and June 30, 1980, including correspondence and instructions or directions, written or verbal, given by representatives of Trinity Properties; any documents and research notes used in preparation of the three named opinions; all correspondence, notes, instructions and directions relative to your meeting in August, 1980, regarding the N.C. Intangible Tax Question of Genesis Leases, Inc.

. . . .

all records relating to opinions rendered to Trinity Properties, Inc., 5821 Park Rd., Charlotte, N.C., dated Nov. 3, 1978, Sept. 17, 1979 and June 30, 1980, including correspondence and instructions or directions, written or verbal, given by representatives of Trinity Properties; and documents and research notes used in preparation of the three named opinions.

. . . .

all records relating to opinions rendered to Trinity Properties, Inc., 5821 Park Rd., Charlotte, N.C., by R. Craig Miller including correspondence, instructions or directions, written or verbal, given by representatives of Trinity Properties, documentation reflecting information furnished to Miller for use in preparing the opinion; Notes on any research done for the opinion.

The subpoena issued to the third attorney was only for his testimony. The district court's order required each subpoenaed attorney to testify to the following inquiries:

(1) Were the facts contained in the various opinion letters communicated by the intervenors?

(2) Were there any other facts communicated by the intervenors which do not appear in the opinion letter?

(3) If there were such other facts, what are those facts?

(4) If certain other facts had been communicated by the intervenors (but in fact were not), would those facts have changed the opinion?

■■■ The government initially contends that the order denying the appellants' motion to quash is a nonappealable interlocutory order. Generally, one served with a subpoena may not appeal a denial of a motion to quash without first resisting the subpoena and being found in contempt.[2] *Cobbledick v. United States*, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940). However, when the one who files the motion to quash is not the person to whom the subpoena is directed and the movant claims that production of the subpoenaed documents would violate his fifth amendment privilege against self-incrimination, the movant is permitted an immediate appeal. *Perlman v. United States*, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918). The theory underlying this exception to the general rule is that in those situations, there is a real possibility the third party will not risk being found in contempt and will turn over the subpoenaed documents. If that happens, the information will be revealed and the party challenging the subpoena will be denied effective appellate review at a later stage. We feel that identical interests supporting the immediate appeal rule in *Perlman* support allowing the appeal in this case. *See In re Grand Jury Proceedings (Jeffrey Fine),* 641 F.2d 199 (5th Cir.1981); *In re Grand Jury Proceedings (Gary Katz),* 623 F.2d 122 (2d

---

**2.** None of the subpoenaed witnesses in this case had been held in contempt of court prior to the filing of this appeal.

Cir.1980); *In re November 1979 Grand Jury,* 616 F.2d 1021 (7th Cir.1980); *In re Grand Jury Proceedings (Appeal of FMC Corp.),* 604 F.2d 798 (3d Cir.1979); *Velsicol Chemical Corp. v. Parsons,* 561 F.2d 671 (7th Cir.1977), *cert. denied,* 435 U.S. 942, 98 S.Ct. 1521, 55 L.Ed.2d 538 (1978). *But see In re Oberkoetter,* 612 F.2d 15 (1st Cir.) *app. for stay denied,* 444 U.S. 1041, 100 S.Ct. 726, 62 L.Ed.2d 727 (1980).[3]

■ The appellants, in seeking to overturn the district court's ruling, rely on the doctrine of attorney-client privilege asserting that the subpoenaed information was advice they obtained from their attorneys as clients. The burden is on the proponent of the attorney-client privilege to demonstrate its applicability. *Weil v. Investment/Indicator, Research & Management, Inc.,* 647 F.2d 18, 25 (9th Cir.1981); *Federal Trade Commission v. TRW, Inc.,* 628 F.2d 207, 213 (D.C.Cir.1980); *Bouschor v. United States,* 316 F.2d 451, 456 (8th Cir.1963). The proponent must establish not only that an attorney-client relationship existed, but also that the particular communications at issue are privileged and that the privilege was not waived. *United States v. Bump,* 605 F.2d 548, 551 (10th Cir.1979); *United States v. Stern,* 511 F.2d 1364, 1367 (2d Cir.1975); *In re Horowitz,* 482 F.2d 72, 81–82 (2d Cir.1973).

The classic test for application of the attorney-client privilege is set forth in *United States v. United Shoe Machinery Corp.,* 89 F.Supp. 357, 358–59 (Mass.1950):

The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in

some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

■ Any disclosure inconsistent with maintaining the confidential nature of the attorney-client relationship waives the attorney-client privilege. Any voluntary disclosure by the client to a third party waives the privilege not only as to the specific communication disclosed, but often as to all other communications relating to the same subject matter. *In re Sealed Case,* 676 F.2d 793, 808–09 (D.C.Cir.1982). In *Sealed,* the court stated that when a party reveals part of a privileged communication to gain an advantage in litigation, the party waives the attorney-client privilege as to all other communications relating to the same subject matter. Selective disclosure for tactical purposes waives the privilege. *Id.* at 818. In *United States v. Cote,* 456 F.2d 142, 144 (8th Cir.1972), the Eighth Circuit held that where taxpayers revealed the substance of their attorney's tax advice on their amended tax return, they waived the attorney-client privilege as to the details underlying that reported data. *See also Garfinkle v. Arcata Nat. Corp.,* 64 F.R.D. 688 (S.D.N.Y.1974) (where defendant injected his counsel's opinion letter as a defense, plaintiff was entitled to probe into the circumstances surrounding issuance of the letter and could not be limited to the letter itself.) The *Sealed* court noted, however, that courts apparently retain discretion not to impose full waiver as to all communications on the same subject matter where the client has merely disclosed a communication to a third party, as opposed to making some use of it. *In re Sealed Case,* 676 F.2d at 809 n. 54.

■ Upon reviewing the record, we doubt that the appellants have established that the alleged privileged communications fall within the scope of the attorney-client privilege. The appellants retained the attorneys primarily for the commercial purpose of obtaining written tax opinions to

---

**3.** *See Note, The* Perlman *Exception: Limitations Required By the Final Decision Rule,* 49 U.Chi.L.Rev. 798, 812–16 (1982).

include in their coal lease promotion brochures rather than for the purpose of obtaining legal advice for their own guidance as clients. Assuming, however, that the attorney-client privilege applies to the subpoenaed documents and testimony, the privilege was nevertheless waived by the appellants. The success of appellants' business venture depended upon convincing potential investors that purported tax benefits existed in fact, and this rested on interpretation of the tax laws. The appellants not only obtained the tax law opinions for the ultimate use of persons other than themselves, but also publicized portions of the legal opinions in brochures and other printed material. They cannot now assert a right to quash the subpoenas (1) to block the grand jury's access to documents substantial portions of which the appellants have published to the public at large, or (2) to prevent the revelation of the factual communications between the appellants and their attorneys underlying the published opinion letters.

For the above reasons, we affirm the district court's order denying appellants' motion to quash.

AFFIRMED.