SHEET METAL WORKERS INTER-
NATIONAL ASSOCIATION,
Plaintiff–Appellee,

v.

Raymond J. SWEENEY, Party
in Interest, Appellant,

and

Edward J. Carlough; Marie E. Dequatro;
Harry Huge; Krista Fogleman; Dono-
van, Leisure, Newton & Irvine, formerly
known as Donovan, Leisure, Rogovin,
Hugh & Schiller, formerly known as Ro-
govin, Hugh & Schiller; Shea & Gould,
Defendants,

v.

Donald FISHER; Arthur R. Moore; Mi-
chael J. Sullivan; Roberts G. Mammini;
Timothy H. Roche; Michael L. Cannon;
Raymond Boucher; William F. Stephen;
John C. Beaulieu; Joseph Demark;
Lawrence Cassidy, Third–Party Defen-
dants.

In re John DOE, A91–299,
Grand Jury 93–3.

UNDER SEAL, Plaintiff–Appellee,

v.

UNDER SEAL, Defendant–Appellant.

Nos. 94–1718, 94–5404.

United States Court of Appeals,
Fourth Circuit.

Argued June 9, 1994.

Decided July 5, 1994.

**ARGUED:** James J. McGuire, Mayer, Brown & Platt, New York City, for appellant. Stephen P. Learned, Asst. U.S. Atty., Alexandria, VA, for appellee U.S.; John O'Brien Clarke, Jr., Highsaw, Mahoney & Clarke, P.C., Washington, DC, for appellee Sheet Metal Workers. **ON BRIEF:** Nicholas W. Lobenthal, Mayer, Brown & Platt, New York City; Thomas DiLenge, Mayer, Brown & Platt, Washington, DC, for appellant. Helen F. Fahey, U.S. Atty., Alexandria, VA, for appellee U.S.

Before WIDENER, WILLIAMS and MICHAEL, Circuit Judges.

Affirmed by published opinion. Judge WIDENER wrote the opinion in which Judge WILLIAMS and Judge MICHAEL joined.

## OPINION

WIDENER, Circuit Judge:

This case involves disputes over attorney-client privilege arising from a Grand Jury investigation and a civil case. The cases were consolidated for purposes of this appeal, and we affirm.

In the criminal case, *In Re John Doe A91–299, Grand Jury 93–3 (Under Seal)*, the Grand Jury subpoenaed attorney John Doe of the law firm of Arent Fox Kinter Plotkin & Kahn (Arent Fox). Appellant Raymond J. Sweeney sought to quash the subpoena on the ground that the attorney's testimony would involve matters and documents within the scope of Arent Fox's representation of Sweeney, which were protected by attorney-client privilege. Sweeney appeals the district court's denial of his motion to quash the subpoena. The civil case, *Sheet Metal Workers Int'l Ass'n v. Carlough*, involves a suit by the Sheet Metal Workers International Association (Union) against its ex-president and Pension Fund Chairman, Edward J. Carlough, and others, for misusing Union funds for the purchase of a residence in violation of ERISA and other statutory and common law obligations. In the civil case, the Union desired to take Sweeney's deposition, but he moved to disqualify the Union's attorneys and quash the subpoena, on the basis that the Union's attorneys had received information covered by the attorney-client privilege from the Pension Fund's former attorneys, Arent Fox. Sweeney advanced the same claim of attorney-client privilege regarding Arent Fox as he did in the criminal investigation. The district court denied the motion to disqualify and the motion to quash, holding in both the civil and criminal cases, that Sweeney did not have an attorney-client relationship with Arent Fox or an expectation of confidentiality and that, to the extent such may have existed, he had waived it. Jurisdiction for both appeals is noted under 28 U.S.C. § 1291 and *Perlman v. United States*, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918).[1]

1. The United States has now advised that Sweeney is a target of the grand jury investigation. The United States agrees that jurisdiction in the *Doe* case lies under *Perlman*. Because Sweeney is not a party to the *Sheet Metal Workers* case, we think the situation in that case is more like *Perlman* than it is like *Firestone Tire and Rubber v. Risjord*, 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981) in which the Court held that a reason that the disqualification of an attorney was not an appealable order was that the judgment might be reversed. Since Sweeney is not a party in the *Sheet Metal Workers* case, a reversal of the judgment on account of his failure to disqualify the attorneys would be unlikely, even if possible. So we think the *Sheet Metal Workers*

We affirm substantially on the basis that the decisions of the district court were not clearly erroneous.

It is not an overstatement to say that the gist of the case is whether the facts presented to the district court warrant its conclusion that Sweeney and Arent Fox did not have an attorney-client relationship, that Sweeney had no reasonable expectation of confidentiality, and that Sweeney waived any privilege that may have existed.

Sweeney was retained counsel for the Sheet Metal Workers National Pension Fund (Fund) and advised the Fund in 1989 with respect to its intended purchase of a large home to be leased back to the Union as office space, known as Conference Center II. In 1991, Arent Fox also became the Fund's attorneys, specifically in connection with a federal grand jury investigation of the Fund, including its purchase of Conference Center II. Sweeney had dealings with Arent Fox attorneys in the course of the government's investigation. His best case follows, many of the following facts being taken from Sweeney's affidavit. On March 30, 1992 he met with Arent Fox lawyers who advised him to be candid about the Fund and did not advise him to retain his own counsel. On December 23, 1992 he met with Arent Fox and provided them with documents in his possession concerning Conference Center II and other matters in which he had represented the Fund. Arent Fox advised him what documents in his file should be produced pursuant to a grand jury subpoena duces tecum directed to the Fund. In January of 1993, Katherine Voelker, an attorney with Arent Fox, prepared Sweeney for an interview with the Assistant United States Attorney (AUSA) investigating the Fund's purchase of Conference Center II, and accompanied him to the interview. On August 24, 1993 Arent Fox presented Sweeney with a tolling agreement, which extended the statute of limitations for any cause of action the Fund might have against Sweeney. On October 21, 1993, Sweeney met with Doe of Arent Fox and told him he had memoranda to his file discussing the 1989 purchase of Conference Center II and conversations between Sweeney and

Carlough, among others. Sweeney mailed Doe those memoranda the next day. He also mailed copies of the same memoranda to Edmund D'Elia, newly appointed general counsel of the Fund and the Union. Sweeney mailed copies of those memoranda to the AUSA on November 9, 1993. On November 17, 1993, Sweeney again met with the AUSA, in the presence of Mrs. Voelker, but at some point in the interview Sweeney asked her to leave. The AUSA continued the Sweeney interview with a labor investigator present. On this factual basis, Sweeney claims to have had a belief that Arent Fox represented him personally up until the tolling agreement of August 24, 1993 and claims that he had a joint defense-type relationship with Arent Fox in which he had a reasonable expectation of confidentiality.

Besides the Union's case against the trustees, to which Sweeney is not a party, one Loonie, a participant in the Fund, filed a suit against several trustees and attorneys, including Sweeney, *Loonie v. Carlough, et al.,* Civil Action No. 93–1596–A. Arent Fox represented the plaintiff in that case and sued Sweeney for legal malpractice for his advice to the Fund's trustees regarding the purchase of Conference Center II. The trustees and attorneys, but excluding Sweeney (who joined in the motion later), moved to disqualify Arent Fox. On February 18, 1994, the district court dismissed the *Loonie* complaint on the basis that Arent Fox was disqualified because of the trustees' and their attorneys' expectation of confidentiality that was not clearly negated by the actions of Arent Fox. The firm of Tydings & Rosenberg replaced Arent Fox in this suit, and the district court denied it use of Arent Fox's work product and again dismissed the complaint on March 11, 1994, with leave to file an amended complaint that would not rely on any confidential information. On the same day as the dismissal, Sweeney filed an affidavit and motion in support of the motion to dismiss the complaint, based on Sweeney's allegation that he too enjoyed an attorney-client relationship with Arent Fox and an expectation of confidentiality pursuant to a joint defense-type relationship. Tydings & Rosenberg refiled

case is more like *Perlman* than like *Firestone,* and

we have jurisdiction to decide the case.

the *Loonie* complaint on April 1, 1994, but the district court dismissed that complaint on May 20, 1994, for lack of jurisdiction. It is the understanding of the parties that this action will be refiled as a diversity case.

In the meantime and pursuant to its investigation, the Grand Jury issued a subpoena *duces tecum* to Doe to testify on May 10, 1994 and bring with him the memoranda that Sweeney had given to him in October of 1993. However, based on Sweeney's affidavit filed in the *Loonie* case brought by the Fund, Doe declined to testify before the grand jury unless ordered to do so by the court. The government sought a show cause order against Doe, and, at a district court hearing on the order held on May 27, 1994, Sweeney presented his affidavit and an ex parte, *in camera* supplemental affidavit regarding his claimed representation by or expectation of confidentiality with Arent Fox. The government presented the affidavits of Mrs. Voelker, the sealed affidavit of an attorney for a defendant in one of the civil cases, James M. Pitt, a senior investigator for the United States Department of Labor who was present during Sweeney's interview with the AUSA on November 17, 1993, and Brian McCarthy, the Fund's retained counsel who arranged for Arent Fox to represent the Fund regarding the government investigation into Conference Center II. Also filed were the affidavits and deposition testimony of Doe to the effect that no attorney-client relationship existed, nor did the circumstances warrant any reasonable expectation of confidentiality. The district court found that no attorney-client relationship existed between Sweeney and Arent Fox, and to the extent that there may have been such a relationship, it had been waived by Sweeney when he turned the memoranda in question over to the government. It ordered Doe to testify before the Grand Jury concerning Sweeney's memoranda.

As for the civil case, the Union first subpoenaed Sweeney for a deposition to be taken on April 13, 1994. When Sweeney failed to appear for this deposition, the Union petitioned for an order to show cause why Swee-

ney should not be held in contempt for failing to appear, and concurrently obtained another subpoena directing Sweeney to appear at an April 28, 1994 deposition. Sweeney responded by moving to quash the subpoena, claiming that the Union's attorneys, the firm of Highsaw, Mahoney & Clarke, would depose him about information and documents that Highsaw obtained from Arent Fox by Arent Fox's breach of Sweeney's privileged confidences.[2] The Union's show cause petition and Sweeney's motion to quash were heard by a magistrate judge on April 29, 1994, who made no findings of fact regarding the attorney-client relationship at issue here, but nonetheless ordered that Sweeney's deposition could be taken by any attorney who was completely shielded from any knowledge of information obtained directly or indirectly from Arent Fox and ordered the deposition be placed under seal. Upon reconsideration of the magistrate judge's order, the district court found that no attorney-client relationship existed between Sweeney and Arent Fox, nor was there an expectation of confidentiality; and that the privilege or expectation, if any existed, had been waived. The district court based its conclusion on the same reasons that it relied upon in the Grand Jury case heard earlier that day. The district court ordered that Sweeney be deposed during the week of May 30, 1994 by the Highsaw law firm with regard to the memoranda and other matters relevant to the Union's case.

■ Our first consideration is the standard of review of a district court's determination of the existence of an attorney-client privilege. The district court's conclusions as to the non-existence of any attorney-client privilege and expectation of confidentiality rest essentially on determinations of fact, which we review for clear error. See *United States v. Tedder*, 801 F.2d 1437, 1442 (4th Cir.1986) (including as questions of fact, whether a person sought to become a client, sought advice from the attorney, and expected the communications to remain confidential), *cert. denied,* 480 U.S. 938, 107 S.Ct. 1585, 94 L.Ed.2d 775 (1987).

---

**2.** Sweeney does not suggest any information in the hands of Clarke any more far reaching than the disclosures he made in the interview with the AUSA and Pitt on November 17, 1993.

Sweeney argues that he considers the memoranda and all conversations that Sweeney had with Arent Fox from March of 1992 to the end of 1993, to be confidential, and additionally, in the civil case, he seeks to protect all of Doe's statements made to John Clarke, Jr., who is the Union's attorney in the *SMWIA* case.

Sweeney admits, however, in his affidavit, that, once he was presented and signed the tolling agreement on August 24, 1993, he "concluded that Arent Fox had ceased to represent me personally." Therefore, the memoranda which Sweeney gave to Arent Fox in October 1993, by Sweeney's admission, are not protected as within the scope of any attorney-client relationship or similar privilege that may have existed prior to August 24, 1993. However, Sweeney also claims that, although knowing that his position was potentially adverse to that of the Fund after signing the tolling agreement, he nonetheless had an expectation of confidentiality pursuant to a joint defense-type relationship with the Fund and Arent Fox in the government investigation.[3] Sweeney's claim, therefore, is based on a factual determination whether an attorney-client relationship or a joint defense-type relationship existed and whether Sweeney had any expectation of confidentiality.

On the evidence before it in each case, we are of opinion that the district court was not clearly erroneous in finding that no attorney-client relationship or expectation of confidentiality existed between Sweeney and Arent Fox. Quite relevant evidence regarding whether an attorney-client relationship existed prior to August 24, 1993 is in the affidavit of Katherine Voelker, an Arent Fox attorney, who stated to the AUSA at Sweeney's interview on January 28, 1993 that she represented the Fund, and not Sweeney.[4] This state-

ment is contrary to Sweeney's affidavit that he thought Mrs. Voelker was representing him at that interview. As for any expectation of confidentiality that Sweeney claims to have had pursuant to a joint defense-type relationship with Arent Fox after August 24, 1993, Mrs. Voelker announced at the November 17, 1993 interview that she was there to represent the Fund. Sweeney told Mrs. Voelker, his supposed attorney, to leave his November 17, 1993 interview with the AUSA. This evidence thus substantially refutes Sweeney's claim of any attorney-client relationship or expectation of confidentiality. Furthermore, the tolling agreement which was presented to Sweeney in August and which was signed on October 1, 1993, necessarily alerted Sweeney to the fact that the Fund was prepared to sue him, and gives less weight to Sweeney's claim that he believed he was involved in a joint defense-type relationship with the Fund and Arent Fox. There being evidence on the record supporting the district court's finding that Sweeney did not have either an attorney-client relationship with Arent Fox, nor any expectation of confidentiality, we hold that the district court's findings in each instance are not clearly erroneous.

Any privilege regarding information communicated by Sweeney to Arent Fox because they were engaged in a joint defense, must rest in the first instance on the existence of some common interest about a legal matter. See *In re Grand Jury Subpoenas*, 902 F.2d at 249. Sweeney argues that the common interest between him and Arent Fox was "keeping criminal indictments and other government interference with the Fund at bay." To the contrary, although Sweeney had an interest in avoiding indictment or civil liability for himself and perhaps other trustees that he may have advised with respect to the purchase of Conference Center II, the Fund did not have such an interest. Indeed,

---

**3.** A joint defense rule protects as confidential information exchanged between "persons who share a common interest in litigation" on the basis that they "should be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims." *In re Grand Jury Subpoenas, 89–3 and 89–4, John Doe 89–129,* 902 F.2d 244, 249 (4th Cir.1990).

**4.** The government case contained both Mrs. Voelker's affidavit and an affidavit of a special investigator Pitt present at this interview that corroborates the position of the government that Sweeney was aware of Arent Fox's position as counsel to the Fund only.

the interest of the Fund was to the contrary. When the Fund told Sweeney on October 21, 1993 that the AUSA should have Sweeney's memoranda, which inculpated Carlough and others, and which was subject to the Fund's attorney-client privilege and work product privilege, it was evident that the Fund did not share the common interest with Sweeney that he claims. Sweeney's conclusory statements in his affidavit that he believed his interests and the Fund's interests were the same, even after Arent Fox had had him sign a tolling agreement and had indicated otherwise by their actions, simply does not sustain Sweeney's burden in establishing that his communications were privileged.[5] See *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir.1982) ("The burden is on the proponent of the attorney-client privilege to demonstrate its applicability ... [citations omitted]. The proponent must establish not only that an attorney-client relationship existed, but also that the particular communications at issue are privileged and that the privilege was not waived.")

■ Sweeney argues that the governing fact in the establishment of privilege pursuant to an attorney-client relationship or an expectation of confidentiality, is Sweeney's belief that such a relationship existed. We have adopted the view, however, that the expectation of confidentiality applies to the attorney as well as to the client. We quoted Professor McCormick and adopted his view. ... McCormick, Evidence, § 91, pp. 187–88 (Cleary ed.1972):

> "It is of the essence of the privilege that it is limited to those communications which the client either expressly made confidential or which he could reasonably assume under the circumstances would be understood by the attorney as so intended."

And we have adopted this view in *United States v. Jones*, 696 F.2d 1069 (4th Cir. 1982) that the "essence" of the privilege is the protection of what was "expressly

made confidential" or should have been "reasonably assume[d] ... *by the attorney* as so intended."

*In re Grand Jury Proceedings*, 727 F.2d 1352, 1355–56 (4th Cir.1984) (italics added). We are of opinion that, in addition to the affidavits of Mrs. Voelker and the labor investigator, certain uncontradicted facts support the refusal of the district court to credit Sweeney's asserted belief that a privilege was intended. Sweeney is bound to have known that the memoranda would be useful to the Fund in civil suits that Sweeney knew, because of the tolling agreement, were contemplated. Sweeney also knew of the ongoing grand jury investigation. He is bound to have known of the usefulness of the memoranda to the AUSA in the conduct of that investigation. The assertion of a claim of privilege for information turned over to the other side in each instance, civil and criminal, knowing of its damning effect, is simply straining too far.

■ Furthermore, it is factually undisputed that Sweeney gave copies of his memoranda to the AUSA[6] which supports the district court's legal determination that, if any privilege or expectation of confidentiality had existed, Sweeney waived it by transmitting the documents to parties outside of that relationship. In *Jones*, we held that:

> Any disclosure inconsistent with maintaining the confidential nature of the attorney-client relationship waives the attorney-client privilege. Any voluntary disclosure by the client to a third party waives the privilege not only as to the specific communication disclosed, but often as to all other communications relating to the same subject matter. *In re Sealed Case*, 676 F.2d 793, 808–09 (D.C.Cir.1982).

*Jones*, 696 F.2d at 1072.

■ One further point deserves mention. Sweeney requests that we remand both cases to the district court for additional discovery

---

**5.** To the same effect is Sweeney's *ex parte, in camera* affidavit, presented to the court in both cases, which purports to support Sweeney's belief that he had an expectation of confidentiality in his conversations with Arent Fox and his memoranda.

**6.** We do not depend on Sweeney's transmission of the memoranda to D'Elia. Sweeney has claimed that transfer was explicitly made confidential, a question we need not and do not reach.

and fact finding. He was afforded, however, a hearing before the magistrate judge in the civil case, *Sheet Metal Workers Int'l Ass'n v. Carlough*, as well as a hearing before the district judge in that case to reconsider the decision of the magistrate judge. He was also afforded a hearing in the criminal case, *In Re John Doe A91–299, Grand Jury 93–3 (Under Seal)*, and permitted to intervene in that case. He has had adequate opportunity to present his contentions and we do not believe the district court abused its discretion as it declined to prolong these proceedings.

In summary, if the affidavit of Sweeney is viewed most favorably to him, perhaps he might succeed in his claims; but if the affidavits and depositions of Mrs. Voelker, Doe, and Pitt, the labor investigator, are taken at face value, there is little doubt that Sweeney might not prevail.[7] In such a case, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous," *Anderson v. Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985), and "[t]his is so even where the district court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts." *Anderson*, at p. 574, 105 S.Ct. at pp. 1511–12. This being the law, we think it is apparent that the district court's findings were not clearly erroneous.

The orders appealed from in each case are, accordingly,

***AFFIRMED.*** [8]

---

7. By mentioning the affidavits and depositions with particularity, we do not mean to disregard the other evidence.

8. The motion of Sweeney filed June 2, 1994 in No. 94–5404 for a stay pending appeal is dismissed as moot, as is the motion of the Sheet Metal Workers filed June 8, 1994 in No. 94–1718 for reconsideration of the motion for a stay pending appeal.

The motion of the Sheet Metal Workers filed June 8, 1994 in No. 94–1718 to file a supplemental appendix and to place a portion of the same under seal is granted.

The motion of the Sheet Metal Workers filed June 13, 1994 in No. 94–1718 for leave to file a memorandum in response is granted.

The motion of Sweeney filed June 24, 1994 in No. 94–1718 to file a supplemental appendix is granted.