**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

In Re: Grand Jury Subpoena: UNDER
SEAL

UNDER SEAL,
　　　　　　*Petitioner-Appellant,*

v.

UNITED STATES OF AMERICA,
　　　　　　*Respondent-Appellee.*

No. 04-4410

In Re: Grand Jury Subpoena: UNDER
SEAL

UNDER SEAL,
　　　　　　*Petitioner-Appellant,*

v.

UNITED STATES OF AMERICA,
　　　　　　*Respondent-Appellee.*

No. 04-4411

In Re: Grand Jury Subpoena

UNITED STATES OF AMERICA,
　　　　　　*Plaintiff-Appellee,*

v.

KENT WAKEFORD,
　　　　　　*Defendant-Appellant.*

No. 04-4673

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(CR-04-178-MG; CR-04-178)

Argued: March 17, 2005

Decided: July 18, 2005

Before WILKINS, Chief Judge, NIEMEYER, Circuit Judge,
and Samuel G. WILSON, United States District Judge
for the Western District of Virginia, sitting by designation.

---

Affirmed by published opinion. Judge Wilson wrote the opinion, in
which Chief Judge Wilkins and Judge Niemeyer joined.

---

## COUNSEL

**ARGUED:** Alison Courtney Barnes, ROBBINS, RUSSELL, ENG-
LERT, ORSECK & UNTEREINER, L.L.P., Washington, D.C.; Wil-
liam H. Crispin, CRISPIN & ASSOCIATES, P.L.L.C., Washington,
D.C.; Henry Winchester Asbill, COZEN O'CONNOR, Washington,
D.C., for Appellant. Charles Francis Connolly, Assistant United
States Attorney, OFFICE OF THE UNITED STATES ATTORNEY,
Alexandria, Virginia, for Appellee. **ON BRIEF:** Lauren A. Green-
berg, CRISPIN & ASSOCIATES, P.L.L.C., Washington, D.C.; Law-
rence S. Robbins, Gary A. Orseck, ROBBINS, RUSSELL,
ENGLERT, ORSECK & UNTEREINER, L.L.P., Washington, D.C.;
William B. Moffitt, L. Barrett Boss, COZEN O'CONNOR, Washing-
ton, D.C.; Paul Hugel, Charles Clayman, CLAYMAN & ROSEN-
BERG, New York, New York, for Appellant. Paul J. McNulty, United
States Attorney, Dana J. Boente, Assistant United States Attorney,
Adam A. Reeves, Trial Attorney, Criminal Division, UNITED
STATES DEPARTMENT OF JUSTICE, Alexandria, Virginia, for
Appellee.

**OPINION**

WILSON, District Judge:

This is an appeal by three former employees of AOL Time Warner ("AOL") from the decision of the district court denying their motions to quash a grand jury subpoena for documents related to an internal investigation by AOL. Appellants argued in the district court that the subpoenaed documents were protected by the attorney-client privilege. Because the district court concluded that the privilege was AOL's alone and because AOL had expressly waived its privilege, the court denied the appellants' motion. We affirm.

I.

In March of 2001, AOL began an internal investigation into its relationship with PurchasePro, Inc. AOL retained the law firm of Wilmer, Cutler & Pickering ("Wilmer Cutler") to assist in the investigation. Over the next several months, AOL's general counsel and counsel from Wilmer Cutler (collectively referred to herein as "AOL's attorneys" or the "investigating attorneys") interviewed appellants, AOL employees Kent Wakeford, John Doe 1, and John Doe 2.[1]

The investigating attorneys interviewed Wakeford, a manager in the company's Business Affairs division, on six occasions. At their third interview, and the first one in which Wilmer Cutler attorneys were present, Randall Boe, AOL's General Counsel, informed Wakeford, "We represent the company. These conversations are privileged, but the privilege belongs to the company and the company decides whether to waive it. If there is a conflict, the attorney-client privilege belongs to the company." Memoranda from that meeting also indicate that the attorneys explained to Wakeford that they represented AOL but that they "could" represent him as well, "as long as no conflict appear[ed]." The attorneys interviewed Wakeford again three days later and, at the beginning of the interview, reiterated that they repre-

_____

[1]Because the grand jury has indicted Wakeford, we refer to him by name.

sented AOL, that the privilege belonged to AOL, and that Wakeford could retain personal counsel at company expense.

The investigating attorneys interviewed John Doe 1 three times. Before the first interview, Boe told him, "We represent the company. These conversations are privileged, but the privilege belongs to the company and the company decides whether to waive it. You are free to consult with your own lawyer at any time." Memoranda from that interview indicate that the attorneys also told him, "We can represent [you] until such time as there appears to be a conflict of interest,[but] . . . the attorney-client privilege belongs to AOL and AOL can decide whether to keep it or waive it." At the end of the interview, John Doe 1 asked if he needed personal counsel. A Wilmer Cutler attorney responded that he did not recommend it, but that he would tell the company not to be concerned if Doe retained counsel.

AOL's attorneys interviewed John Doe 2 twice and followed essentially the same protocol they had followed with the other appellants. They noted, "We represent AOL, and can represent [you] too if there is not a conflict." In addition, the attorneys told him that, "the attorney-client privilege is AOL's and AOL can choose to waive it."

In November, 2001, the Securities and Exchange Commission ("SEC") began to investigate AOL's relationship with PurchasePro. In December 2001, AOL and Wakeford, through counsel, entered into an oral "common interest agreement," which they memorialized in writing in January 2002. The attorneys acknowledged that, "representation of [their] respective clients raise[d] issues of common interest to [their] respective clients and that the sharing of certain documents, information, . . . and communications with clients" would be mutually beneficial. As a result, the attorneys agreed to share access to information relating to their representation of Wakeford and AOL, noting that "the oral or written disclosure of Common Interest Materials . . . [would] not diminish in any way the confidentiality of such Materials and [would] not constitute a waiver of any applicable privilege."

Wakeford testified before the SEC on February 14, 2002, represented by his personal counsel. Laura Jehl, AOL's general counsel, and F. Whitten Peters of Williams & Connolly, whom AOL had retained in November 2001 in connection with the PurchasePro inves-

tigation, were also present, and both stated that they represented Wakeford "for purposes of [the] deposition." During the deposition, the SEC investigators questioned Wakeford about his discussions with AOL's attorneys. When Wakeford's attorney asserted the attorney-client privilege, the SEC investigators followed up with several questions to determine whether the privilege was applicable to the investigating attorneys' March-June 2001 interviews with Wakeford. Wakeford told them he believed, at the time of the interviews, that the investigating attorneys represented him and the company.

John Doe 1 testified before the SEC on February 27, 2002, represented by personal counsel. No representatives of AOL were present. When SEC investigators questioned Doe about the March-June 2001 internal investigation, his counsel asserted that the information was protected and directed Doe not to answer any questions about the internal investigation "in respect to the company's privilege." He stated that Doe's response could be considered a waiver of the privilege and that, "if the AOL lawyers were [present], they could make a judgment, with respect to the company's privilege, about whether or not the answer would constitute a waiver."

On February 26, 2004, a grand jury in the Eastern District of Virginia issued a subpoena commanding AOL to provide "written memoranda and other written records reflecting interviews conducted by attorneys for [AOL]" of the appellants between March 15 and June 30, 2001. While AOL agreed to waive the attorney-client privilege and produce the subpoenaed documents, counsel for the appellants moved to quash the subpoena on the grounds that each appellant had an individual attorney-client relationship with the investigating attorneys, that his interviews were individually privileged, and that he had not waived the privilege. Wakeford also claimed that the information he disclosed to the investigating attorneys was privileged under the common interest doctrine.

The district court denied John Doe 1's and John Doe 2's motions because it found they failed to prove they were clients of the investigating attorneys who interviewed them. The court based its conclusion on its findings that: (1) the investigating attorneys told them that they represented the company; (2) the investigating attorneys told them, "we *can* represent you," which is distinct from "we *do* represent

you"; (3) they could not show that the investigating attorneys agreed to represent them; and (4) the investigating attorneys told them that the attorney-client privilege belonged to the company and the company could choose to waive it.

The court initially granted Wakeford's motion to quash because it found that his communications with the investigating attorneys were privileged under the common interest agreement between counsel for Wakeford and counsel for AOL. Following a motion for reconsideration, the court reversed its earlier ruling and held that the subpoenaed documents relating to Wakeford's interviews were not privileged because it found that Wakeford's common interest agreement with AOL postdated the March-June 2001 interviews. In addition, the court held that Wakeford failed to prove that he was a client of the investigating attorneys at the time the interviews took place. The court based its conclusion on its findings that: (1) none of the investigating attorneys understood that Wakeford was seeking personal legal advice; (2) the investigating attorneys did not provide any personal legal advice to him; and (3) the investigating attorneys believed they represented AOL and not Wakeford. This appeal followed.

## II.

Appellants argue that because they believed that the investigating attorneys who conducted the interviews were representing them personally, their communications are privileged. However, we agree with the district court that essential touchstones for the formation of an attorney-client relationship between the investigating attorneys and the appellants were missing at the time of the interviews. There is no evidence of an objectively reasonable, mutual understanding that the appellants were seeking legal advice from the investigating attorneys or that the investigating attorneys were rendering personal legal advice. Nor, in light of the investigating attorneys' disclosure that they represented AOL and that the privilege and the right to waive it were AOL's alone, do we find investigating counsel's hypothetical pronouncement that they *could* represent appellants sufficient to establish the reasonable understanding that they *were* representing appellants. Accordingly, we find no fault with the district court's

opinion that no individual attorney-client privilege attached to the appellants' communications with AOL's attorneys.[2]

We apply a two-fold standard of review in this case. We give deference to the district court's determination of the underlying facts, and review those findings for clear error. *In re. Grand Jury Subpoena v. Under Seal*, 341 F.3d 331, 334 (4th Cir. 2003); *see also In re. Allen et al.*, 106 F.3d 582, 601 (4th Cir. 1997) (noting the two-fold standard of review). A finding of fact is clearly erroneous, despite the presence of evidence to support it, when the reviewing court, after carefully examining all the evidence, is "left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985). We review the application of legal principles *de novo*. *In re. Grand Jury Subpoena*, 341 F.3d at 334.

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn v. United States*, 449 U.S. 383, 389 (1981). "[W]hen the privilege applies, it affords confidential communications between lawyer and client complete protection from disclosure." *Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998). Because its application interferes with "the truthseeking mission of the legal process," *United States v. Tedder*, 801 F.2d 1437, 1441 (4th Cir. 1986), however, we must narrowly construe the privilege, and recognize it "only to the very limited extent that . . . excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth." *Trammel v. United States*, 445 U.S. 40, 50 (1980). Accordingly, the privilege applies only to "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance." *Fisher v. United States*, 425 U.S. 391, 403

---

[2]The grand jury's return of an indictment against Wakeford does not moot his appeal because the government continues to seek records from the March-June 2001 interviews for trial as to Wakeford and through a second grand jury as to others. Given this high probability of reoccurrence, our opinion is in no way advisory. *See In re. Grand Jury Proceedings*, 33 F.3d 342, 347 (4th Cir. 1994) (applying the "capable of repetition, yet evading review" exception to the mootness doctrine in the context of expired grand jury).

(1976).[3] "The burden is on the proponent of the attorney-client privilege to demonstrate its applicability." *Jones*, 696 F.2d at 1072.

The person seeking to invoke the attorney-client privilege must prove that he is a client or that he affirmatively sought to become a client. "The professional relationship . . . hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention to seek professional legal advice." *United States v. Evans*, 113 F.3d 1457, 1465 (7th Cir. 1997). An individual's subjective belief that he is represented is not alone sufficient to create an attorney-client relationship. *See United States v. Keplinger*, 776 F.2d 678, 701 (7th Cir. 1985)("We think no individual attorney-client relationship can be inferred without some finding that the potential client's subjective belief is minimally reasonable"); *see also*, *In re. Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 923 (8th Cir. 1997) ("[W]e know of no authority . . . holding that a client's beliefs, subjective or objective, about the law of privilege can transform an otherwise unprivileged conversation into a privileged one."). Rather, the putative client must show that his subjective belief that an attorney-client relationship existed was reasonable under the circumstances.[4]

---

[3]This circuit has adopted the classic test to determine whether the attorney-client privilege applies to certain communications or documents. The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982).

[4]This court addressed the question of whether a corporate employee could personally assert the attorney-client privilege for communications with corporate counsel conducting an internal investigation in *United States v. Aramony*, 88 F.3d 1369 (4th Cir. 1996). In *Aramony*, this court affirmed the finding of the district court that Aramony was not the client

With these precepts in mind, we conclude that appellants could not have reasonably believed that the investigating attorneys represented them personally during the time frame covered by the subpoena. First, there is no evidence that the investigating attorneys told the appellants that they represented them, nor is there evidence that the appellants asked the investigating attorneys to represent them. To the contrary, there is evidence that the investigating attorneys relayed to Wakeford the company's offer to retain personal counsel for him at the company's expense, and that they told John Doe 1 that he was free to retain personal counsel. Second, there is no evidence that the appellants ever sought personal legal advice from the investigating attorneys, nor is there any evidence that the investigating attorneys rendered personal legal advice. Third, when the appellants spoke with the investigating attorneys, they were fully apprised that the information they were giving could be disclosed at the company's discretion. Under these circumstances, appellants could not have reasonably believed that the investigating attorneys represented them personally.[5] Therefore, the district court's finding that appellants had no attorney-client relationship with the investigating attorneys is not clearly erroneous.[6]

---

of internal investigation counsel. The court noted that Aramony did not seek legal advice; Aramony could not have reasonably believed that the information he disclosed would be kept confidential; and internal investigation counsel told Aramony that they were retained to represent the company. *Id.* at 1390-92.

[5]The district court made no finding as to whether the appellants, in fact, believed that the investigating attorneys represented them personally.

[6]Appellants maintain the district court improperly relied on *In Re Bevill, Bresler, & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 123 (3d Cir. 1986), in determining that appellants did not have an attorney-client relationship with the investigating attorneys. They contend that *Bevill* creates a litmus test this circuit has not adopted for determining whether there is an attorney-client relationship between corporate employees and corporate counsel. It is unnecessary to decide whether we find *Bevill* fully consistent with our views on this matter because based on the circumstances we have identified, it would not have been objectively reasonable for appellants to believe that the investigating attorneys represented them personally.

The appellants argue that the phrase "we *can* represent you as long as no conflict appears," manifested an agreement by the investigating attorneys to represent them. They claim that, "it is hard to imagine a more straightforward assurance of an attorney-client relationship than 'we can represent you.'" We disagree. As the district court noted, "we *can* represent you" is distinct from "we *do* represent you." If there was any evidence that the investigating attorneys had said, "we *do* represent you," then the outcome of this appeal might be different. Furthermore, the statement actually made, "we *can* represent you," must be interpreted within the context of the entire warning. The investigating attorneys' statements to the appellants, read in their entirety, demonstrate that the attorneys' loyalty was to the company. That loyalty was never implicitly or explicitly divided. In addition to noting at the outset that they had been retained to represent AOL, the investigating attorneys warned the appellants that the content of their communications during the interview "belonged" to AOL. This protocol put the appellants on notice that, while their communications with the attorneys were considered confidential, the company could choose to reveal the content of those communications at any time, without the appellants' consent.

We note, however, that our opinion should not be read as an implicit acceptance of the watered-down "*Upjohn* warnings" the investigating attorneys gave the appellants. It is a potential legal and ethical mine field. Had the investigating attorneys, in fact, entered into an attorney-client relationship with appellants, as their statements to the appellants professed they could, they would not have been free to waive the appellants' privilege when a conflict arose. It should have seemed obvious that they could not have jettisoned one client in favor of another. Rather, they would have had to withdraw from all representation and to maintain all confidences. Indeed, the court would be hard pressed to identify how investigating counsel could robustly investigate and report to management or the board of directors of a publicly-traded corporation with the necessary candor if counsel were constrained by ethical obligations to individual employees. However, because we agree with the district court that the appellants never entered into an attorney-client relationship with the investigating attorneys, they averted these troubling issues.

III.

Wakeford also claims that the documents in question are protected by the joint defense privilege because of his common interest agreement with AOL. However, the district court found that no common interest agreement existed at the time of the interviews in March-June 2001. This finding was not clearly erroneous.

The joint defense privilege, an extension of the attorney-client privilege, protects communications between parties who share a common interest in litigation. *United States v. Schwimmer*, 892 F.2d 237, 243-44 (2d Cir. 1989); *see also Aramony*, 88 F.3d at 1392. The purpose of the privilege is to allow persons with a common interest to "communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims." *In re. Grand Jury Subpoenas 89-3 and 89-4, John Doe 89-129*, 902 F.2d 244, 249 (4th Cir. 1990). For the privilege to apply, the proponent must establish that the parties had "some common interest about a legal matter." *Sheet Metal Workers Int'l Assoc. v. Sweeney*, 29 F.3d 120, 124 (4th Cir. 1994). An employee's cooperation in an internal investigation alone is not sufficient to establish a common interest; rather "some form of joint strategy is necessary." *United States v. Weissman*, 195 F.3d 96, 100 (2d Cir. 1999); *see also Aramony*, 88 F.3d at 1392 ("To be entitled to the protection of this privilege the parties must first share a common interest about a legal matter.").

The district court found that "an agreement to share information pursuant to a common interest did not exist prior to December 2001." Uncontradicted affidavits submitted by counsel for AOL, including Randall Boe, who participated in the March-June 2001 interviews, support the court's finding. Boe stated that, at the time of the interviews, AOL had not entered into an agreement with Wakeford regarding their joint defense. There is no evidence showing that AOL and Wakeford were pursuing a common legal strategy before December 2001. During the March-June 2001 interviews, AOL was in the early stages of its internal investigation; there is no evidence that the investigating attorneys' interviews with Wakeford were for the purpose of formulating a joint defense. Indeed, the stated purpose of the interviews was to gather information regarding AOL's relationship with PurchasePro; it would have been difficult for AOL to know at that

time whether its interests were consistent with or adverse to Wakeford's personal interests. The court's finding was therefore not clearly erroneous.

Because there is no evidence that Wakeford and AOL shared a common interest before December 2001, we find no error in the district court's conclusion that Wakeford had no joint defense privilege before that time.

IV.

After review of the district court's factual findings and legal conclusions, we find no clear error. We find no error in the district court's conclusion that the appellants were not clients of the investigating attorneys and therefore could not assert the attorney-client privilege to prevent disclosure of the subpoenaed documents. Further, we agree with the district court's finding that, because Wakeford failed to establish that he and AOL were cooperating in a common defense before December 2001, he has no joint defense privilege before that time. The district court therefore properly denied the appellants' motions.

*AFFIRMED*