**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 07-5069

UNITED STATES OF AMERICA,

　　　　　　Plaintiff - Appellee,

INVESTMENT PROPERTIES OF AMERICA, LLC,

　　　　　　Intervenor - Appellee,

　　　v.

EDWARD H. OKUN,

　　　　　　Intervenor - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Robert E. Payne, Senior District Judge. (3:07MS167-1)

Argued: May 13, 2008　　　　　　　　Decided: June 11, 2008

Before WILKINSON, NIEMEYER, and MOTZ, Circuit Judges.

Affirmed by unpublished opinion. Judge Niemeyer wrote the opinion, in which Judge Wilkinson and Judge Motz joined.

**ARGUED:** Guy Richard Strafer, Miami, Florida, for Appellant. Brian Lee Whisler, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia; Patrick Hugh O'Donnell, KAUFMAN & CANOLES, PC, Norfolk, Virginia, for Appellees. **ON BRIEF:** Michael J. Rosen, Miami, Florida, for Appellant. Chuck Rosenberg, United States Attorney, Alexandria, Virginia, for Appellee United States of America.

---

Unpublished opinions are not binding precedent in this circuit.

NIEMEYER, Circuit Judge:

On August 27, 2007, a federal grand jury sitting in the Eastern District of Virginia issued a subpoena to Eric Perkins, formerly the Chief Legal Officer of Investment Properties of America, LLC ("IPA"), a company engaged in the acquisition and management of commercial real estate. The grand jury sought Perkins' testimony as it related to transactions involving the misuse of funds by IPA and its CEO and sole shareholder, Edward H. Okun. Okun filed a motion in the district court to quash the grand jury subpoena, asserting personal attorney-client privilege and "common interest" privilege. The district court denied the motion, finding that Okun did not have standing to challenge the subpoena served on Perkins because Okun had not established that he had a personal attorney-client relationship with Perkins giving rise to any privilege. We affirm.

I

Edward H. Okun was, at the relevant time, the sole shareholder and CEO of IPA, as well as the sole shareholder of the 1031 Tax Group, LLC, a business facilitating the exchange of properties under Section 1031 of the Internal Revenue Code. Section 1031 of the Internal Revenue Code allows owners of investment property to defer capital gains taxes that would be due upon sale of a property if the sale proceeds are deposited in a "Qualified Intermediary" until the seller is ready to close on a like-kind replacement

3

property. The grand jury's investigation deals with the alleged misuse of funds held by Qualified Intermediaries that were the subsidiaries of the 1031 Tax Group, through improper loans to both IPA and Okun individually.

IPA's legal staff began looking into the allegedly improper loan transactions in October 2006, first obtaining a memorandum from outside counsel that discussed investment restrictions applicable to funds held by Qualified Intermediaries. After receiving this memorandum from outside counsel, IPA's in-house counsel Eric Perkins began investigating the loan transactions himself, requesting information from various IPA employees. Thereafter, Perkins prepared two memoranda for IPA, one dated November 7, 2006 (the "November 7 Memo") and the other dated November 21, 2006 (the "November 21 Memo"). The November 7 Memo outlined Perkins' understanding of the fund transfers made through loans from the 1031 Tax Group subsidiaries to both IPA and Okun personally. In the November 7 Memo, Perkins repeatedly referred to himself as "in-house counsel" and recommended actions that IPA should take going forward. In the follow-up November 21 Memo, Perkins stated that he was "obligated to advise the company that continuing this course of conduct will likely result in both civil and criminal liability (in multiple jurisdictions) to the entities and individuals involved with such conduct." (Emphasis added). He also clarified his role as Chief Legal Officer of the company,

4

stating that he "represent[ed] the company [IPA] as opposed to its sole owner, officers, managers, or individual employees." He stated that such individuals "should understand that their personal interests may be in conflict (currently or in the future) with those of the company and/or other involved individuals" and advised that they therefore "may wish to obtain independent legal representation to protect their individual interests."

On August 27, 2007, the grand jury issued a subpoena to Perkins, commanding him to testify before it in connection with its investigation into misuse of the funds held by the 1031 Tax Group and the Qualified Intermediaries. Both IPA and Okun moved for leave to intervene in the proceedings and to quash the subpoena served upon Perkins, asserting attorney-client and "common interest" privileges. Okun asserted that Perkins had represented him personally, not merely IPA as corporate in-house counsel, and alternatively that he and IPA shared a "common interest" privilege. On November 2, 2007, IPA, then represented by different counsel, withdrew its motion to quash the subpoena and waived any claims of privilege it had as to communications with Perkins. Thereafter, the district court denied Okun's motion.

In denying Okun's motion, the district court found that Okun did not have standing to challenge the subpoena served on Perkins because he had not established the existence of a personal attorney-client relationship giving rise to privilege. The

5

district court held that "[a]ny claims of privilege belong to Perkins' client, IPA," which had by then withdrawn all such claims. The district court rested its holding on its finding that Okun had not established a "subjective belief that a[] [personal] attorney-client relationship existed [that] was reasonable under the circumstances," as required by In re Grand Jury Subpoena: Under Seal, 415 F.3d 333, 339 (4th Cir. 2005), cert. denied, 546 U.S. 1131 (2006). The court explained that "Okun's testimony [that he had such a reasonable, subjective belief] makes no logical sense," because (1) the "November 7 and the November 21 Memos, by their terms, are not addressed to him as an individual, notwithstanding that he is mentioned in them"; (2) "Okun testified that he continued to entrust confidential information to Perkins after Perkins had allegedly breached both Okun's previous confidences and his specific instructions" -- which "simply defies logic and common sense"; and (3) "Okun's demeanor as a witness further undercuts his credibility."

From the district court's ruling, Okun filed this appeal and an emergency motion to stay compliance with the subpoena. We earlier denied Okun's stay request.

## II

As noted, Under Seal (2005), 415 F.3d at 339, established that to assert attorney-client privilege, an individual must have a

6

"subjective belief" that is "reasonable under the circumstances" that an attorney-client relationship existed.

Here, the district court found that Okun did not have such a "subjective belief" that Perkins was his personal attorney, despite Okun's testimony that he so believed. The district court discredited Okun's testimony based on legitimate credibility determinations, finding that Okun's claim that he believed Perkins was his personal attorney was belied by the context in which Okun claimed that Perkins was his personal attorney, by Okun's demeanor, and by inconsistencies within his testimony. We agree with the district court's findings. Moreover, we conclude that even if Okun could establish that he held a subjective belief that Perkins was acting as his personal attorney, such a belief would not have been reasonable in the circumstances of this case.

As a preliminary matter, in choosing between two versions of relevant events, the district court credited Perkins' testimony rather than Okun's, and we defer to such credibility determinations, especially where, as here, the testimony of Okun was directly contradictory to that of Perkins. When a factfinder is confronted with "two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous." Sheet Metal Worker's Int'l Ass'n v. Sweeney, 29 F.3d 120, 126 (4th Cir. 1994) (quoting Anderson v. Bessemer City, 470 U.S. 564, 574 (1985)). Thus, we accept the district court's findings that (1)

7

Okun did not speak with Perkins prior to the distribution of the November 7 Memo; (2) Okun in fact never spoke to Perkins regarding his personal conduct; and (3) Okun never told Perkins that he was upset because he believed Perkins breached his confidentiality by distributing the Memos to people other than Okun.

With these determinations of fact, there could be no objectively reasonable basis for Okun -- a sophisticated businessman who, as the record reveals, had an understanding of the nature of personal attorney-client relationships -- to have had a belief that Perkins was acting as his personal attorney. In addition, in the November 21 Memo, Perkins affirmatively stated that he was not acting as Okun's personal attorney.

Okun argues that Perkins' circulation of the November 7 and November 21 Memos to R. David Field, who was neither an officer nor employee of IPA or 1031 Tax Group at the time but the prospective Chief Financial Officer of Okun Holdings, a holding company yet to be formed for all of Okun's legally separate companies, would have been improper if Perkins represented only IPA because Perkins would have had authority to circulate the Memos to only IPA's officers and directors. But this argument fails first because IPA had an interest in circulating the relevant Memos to Field, who was set to become the Chief Financial Officer of IPA's prospective parent company and would likely be involved in dealing with this issue. Morever, Okun's assertion that Perkins' circulation of the two

8

Memos to Field somehow supports Okun's belief that Perkins was his personal attorney makes no sense. If Perkins was Okun's personal attorney, he still would have lacked authority to distribute the Memos to Field, and circulation to Field provides no evidence of a personal attorney-client relationship between Okun and Perkins.

In sum, we conclude that the district court properly denied Okun's motion to quash the subpoena issued to Perkins on the basis that Okun lacked standing because he failed to establish a personal attorney-client privilege.

Okun contends alternatively that, even if we affirm the district court's finding that he did not have a personal attorney-client relationship with Perkins, we must nonetheless grant his motion to quash on the basis that there is a "common interest" privilege between him and IPA. In In re Teleglobe Communications Corporation, 493 F.3d 345, 364 (3d Cir. 2007), the court explained that the common interest privilege "allows attorneys representing different clients with similar legal interests to share information without having to disclose it to others." But in this case, Okun failed to establish that he and IPA were represented by separate legal counsel engaged in a joint strategy. Moreover, "[a]n employee's cooperation in an internal investigation alone is not sufficient to establish a common interest; rather some form of joint strategy is necessary." Under Seal (2005), 415 F.3d at 341 (internal quotation marks and citation omitted).

9

Here, not only does the record indicate that Okun likely refused to cooperate with Perkins' internal investigation, but he also has not demonstrated any common interest between the parties as part of an ongoing legal enterprise or strategy. Thus, Okun's motion to quash also fails to be supported by the common interest privilege.

Accordingly, the district court's denial of Okun's motion to quash the grand jury subpoena issued to Perkins is

<u>AFFIRMED</u>.