**UNITED STATES of America,
Plaintiff,**

v.

**Robert James Pearson WHITE,
Defendant.**

**Criminal No. 3:11–2303–CMC.**

United States District Court,
D. South Carolina,
Columbia Division.

April 12, 2013.

455

Stanley D. Ragsdale, Julius Ness Richardson, U.S. Attorney's Office, Columbia, SC, for Plaintiff.

Robert James Pearson White, Jonesville, VA, pro se.

### ORDER AUTHORIZING DISCLOSURE OF CLIENT CONFIDENCES AND COMMUNICATIONS BETWEEN ATTORNEY AND PETITIONER REGARDING BANKRUPTCY PROCEEDINGS

CAMERON McGOWAN CURRIE, District Judge.

Pursuant to South Carolina Rule of Professional Conduct 1.6(b)(5) and/or (b)(6),[1] the United States has moved for an order authorizing attorney Paul L. Held to disclose to the government matters which may arguably fall within the scope of the attorney-client privilege. These matters relate to communications between Mr. Held and Robert Pearson ("Pearson") regarding Pearson's prior bankruptcy filing

in the case of *In re Robert J. Pearson,* C/A No. 10–04450–jw (Bankr.D.S.C). Although Pearson was served with the government's motion on February 12, 2013, he has failed to file a response. Counsel for Pearson has indicated he has no objection to the Government's motion.

For the reasons set forth below, the motion is GRANTED.

The government's motion arises out of ancillary forfeiture proceedings involving the proposed criminal forfeiture of real property identified as 1945 Hatteras Way, Sumter, South Carolina (the "Subject Property"). The Subject Property was included in a Judgment and Preliminary Order of Forfeiture ("POF") previously issued by this court, which was incorporated into the sentence and criminal judgment against defendant Robert James Pearson White ("White"). ECF No. 65. The government provided notice of the proposed forfeiture to potentially interested third parties, including Pearson, who is White's father. ECF No. 71. In response, Pearson filed an ancillary petition contesting forfeiture. ECF No. 88. Pearson asserts that he owns a one-half interest in the Subject Property, along with Michael Porcher ("Porcher"), the uncle of convicted co-conspirator Jermaine Porcher.[2] The government contends that White purchased the Subject Property with drug proceeds, and that Pearson is merely a nominee ("straw") owner.

For purposes of this order, the court accepts as true the following, as set forth in the government's motion.

● The Subject Property was purchased for $35,000 in April 2006 by White and

1. Local Civil Rule 83.I.08, RDE IV.B, adopts the South Carolina Rules of Professional Conduct (Rule 407 of the South Carolina Appellate Court Rules), except as otherwise provided.

2. In its motion, the government states that Porcher has declined to file a petition in this case related to his alleged interest in the Subject Property.

Porcher. Since that time, Porcher built a residence on the property, with cash progress payments which Pearson claims to have provided. Although the residence is largely completed, no one has lived in it up to this point. The property currently has an appraised value with improvements of more than $200,000.

- On October 31, 2007, White was shot several times during a drug-related home invasion in Columbia. A subsequent search of the residence by officers with the Drug Enforcement Administration and the Columbia Police Department turned up $40,529.73 in cash, as well as approximately 1,002 grams of cocaine and drug-related paraphernalia. As a result, the State of South Carolina brought criminal charges against White. On November 16, 2007, approximately two weeks after the home invasion, White transferred his interest in the Subject Property to Pearson for no consideration.
- In June of 2010, Pearson filed for bankruptcy, and was represented by Sumter attorney Paul Held. Bankruptcy procedures and documents obligated Pearson to list, under penalty of perjury, all property in which he had an interest. In his bankruptcy filings, Pearson did not disclose his alleged interest in the Subject Property in the "real property" schedules.

The government contends that the omission of the Subject Property from Pearson's bankruptcy filings supports its theory that he is a straw owner. Such ownership status could affect whether Pearson has standing to contest forfeiture. *See United States v. Weiss,* 467 F.3d 1300 (11th Cir.2006) (a mere nominee lacks the legal interest necessary to establish Article III standing); *United States v. Gamory,* 2010 WL 3880880, *4 (N.D.Ga.2010)

(defendant's father lacks standing to contest forfeiture of vehicle titled in his name because undisputed evidence was that he exercised no dominion and control); *United States v. Hovind,* 2009 WL 2369340, *5 (N.D.Fla.2009) (nominee who exercised no dominion or control over the forfeited property lacks a legal interest under State law, and therefore lacks standing, notwithstanding that he was the titled owner); *United States v. Gomez,* 2000 WL 34029288, *2 (N.D.Iowa 2000) ("possession of mere legal title by one who does not exercise dominion and control over the property is insufficient to establish standing to challenge a forfeiture").

Pursuant to the court's order authorizing ancillary discovery, the government took Pearson's deposition in December 2012. When asked about the omission of the Subject Property from the bankruptcy documents, Pearson acknowledged that the description of property required to be disclosed in the bankruptcy schedules would have required him to list the Subject Property. However, Pearson then faulted his attorney, Mr. Held, for allegedly failing to adequately explain the disclosure process to Pearson. ECF No. 102, Att. 2.

The government now wishes to interview attorney Held regarding his interaction and communications with Pearson in the bankruptcy proceedings, which could involve communications arguably covered by the attorney-client privilege. The government asserts that by blaming his attorney for the omission, Pearson has effectively waived the attorney-client privilege. The government's motion is founded upon South Carolina Rule of Professional Conduct 1.6(b)(5) and (b)(6), which states:

### RULE 1.6. CONFIDENTIALITY OF INFORMATION

(a) A lawyer shall not reveal information relating to the representation of a client unless the client gives informed

consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b).

**(b)** A lawyer to the extent the lawyer reasonably believes necessary:

\* \* \*

(5) may reveal information relating to the representation of a client to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or *to respond to allegations in any proceeding concerning the lawyer's representation of the client;*

(6) *may reveal information relating to the representation of a client to comply with a court order;* ....

Emphasis added.

■ The Fourth Circuit Court of Appeals has summarized the legal precepts governing the attorney-client privilege:

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). "[W]hen the privilege applies, it affords confidential communications between lawyer and client complete protection from disclosure." *Hawkins v. Stables,* 148 F.3d 379, 383 (4th Cir.1998). Because its application interferes with "the truth seeking mission of the legal process," *United States v. Tedder,* 801 F.2d 1437, 1441 (4th Cir.1986), however, we must narrowly construe the privilege, and recognize it "only to the very limited extent that ... excluding relevant evidence has a public good transcending the normally predominant

principle of utilizing all rational means for ascertaining the truth." *Trammel v. United States,* 445 U.S. 40, 50, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980). Accordingly, the privilege applies only to "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance." *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976).[FN3] "The burden is on the proponent of the attorney-client privilege to demonstrate its applicability." *Jones,* 696 F.2d at 1072.

FN3. This circuit has adopted the classic test to determine whether the attorney-client privilege applies to certain communications or documents. The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. *United States v. Jones,* 696 F.2d 1069, 1072 (4th Cir.1982).

*In re Grand Jury Subpoena,* 415 F.3d 333, 338–39 (4th Cir.2005).

There is legal precedent for the proposition that in the bankruptcy context, the privilege generally does not apply to property disclosure issues involving publicly filed court documents. In the factually similar case of *In re Wolbert,* 2010 WL 8971772 (Bkrtcy.W.D.N.C.2010), the debtors failed to disclose certain property on the schedules, and attributed the omissions to their attorney, Mr. O'Connor. The bankruptcy trustee then subpoenaed the attorney's office regarding the matter, and

the debtors responded with a motion to quash the subpoena, asserting the attorney-client privilege. After reviewing various legal authorities and a learned treatise on bankruptcy, the court denied the motion, stating:

.... [T]he documents and conversations between the Wolberts and O'Connor's office concerning matters required disclosures in the petition should not be privileged. The information the Wolberts disclosed in their initial conference with O'Connor and Bigalow concerning their assets and transfers would clearly fall within the attorney-client privilege, at least at that point in time. Any communications between client and counsel during that meeting would also be privileged.

However, after the decision was made that the Wolberts would file bankruptcy, under circuit precedent and the majority view of bankruptcy courts, the privilege was lost, at least as to matters required to be disclosed in the Petition.

Obviously, O'Connor was retained by the Wolberts to prepare the Wolberts' Petition; a "public document" intended to be disclosed to others. There could be no reasonable expectation of confidentiality by the Wolberts as to the data required to be disclosed therein. Since a Petition encompasses all of a debtor's finances, the Wolberts' assets and transfers would be included.

Under the aforementioned Fourth Circuit cases, it would appear likely that the privilege has been lost by the Wolberts as to the Petition, all preliminary drafts of the document, all documents necessary to the preparation of the Petition, all communications relating to that data between the Wolberts and counsel or his staff; and any attorney's notes containing material necessary to the preparation of the document.

*Id.,* *5–6.

Other courts have reached the same conclusion on similar facts. *See United States v. White,* 950 F.2d 426, 429 (7th Cir.1991) (In appeal of conviction for bankruptcy fraud involving failure to disclose property in schedules, court of appeals holds that attorney-client privilege does not apply to evidence provided to government by debtor's bankruptcy lawyer: "When information is disclosed for the purpose of assembly into a bankruptcy petition and supporting schedules, there is no intent for the information to be held in confidence because the information is to be disclosed on documents publicly filed with the bankruptcy court." *Id.*); and, *United States v. Naegele,* 468 F.Supp.2d 165, 169–70 (D.D.C.2007) (information and communications imparted from client to his attorney for purpose of their disclosure in bankruptcy filing are not privileged, because information intended to be disclosed in such filing by definition is not information provided to attorney in confidence).

■ Based upon the foregoing legal authorities, the court concludes that the attorney-client privilege does not apply here, where the government is seeking information from Pearson's attorney regarding the formulation of the bankruptcy schedules, which were subsequently publicly filed.

The court also concludes that Pearson has procedurally defaulted his ability to assert the privilege, by failing to respond to the government's motion. As the holder of the privilege, Pearson bears the burden of demonstrating its applicability, which he has failed to do. There is nothing in the record to demonstrate that Pearson has affirmatively asserted the privilege regarding the bankruptcy case. To the contrary, Pearson failed to respond to the government's motion, and thereby failed to sustain his burden of proving the

applicability of the privilege.[3]

Moreover, the court concludes that Pearson has waived the privilege by casting blame on his attorney. Pearson alleges that the failure to acknowledge his ownership interest in the Subject Property in the bankruptcy proceeding—an omission which could be material to Pearson's standing or other issues relevant to his ancillary claim—was the fault of his attorney in such proceeding. This factual scenario directly implicates Rule 1.6(b)(5), inasmuch as Pearson's "defense" to the omission places the actions of his attorney at issue. Various cases examining waiver in this scenario have given rise to the "at issue" doctrine, wherein courts have found, consistent with the notion embodied by Rule 1.5(b)(5), an implied waiver of the privilege when a client implicitly or indirectly relies, as here, on the existence or substance of privileged information. *See*, for example, *Livingstone v. North Belle Vernon Borough*, 91 F.3d 515, 537 (3rd Cir.1996) (finding that a party's "assertion that she did not appreciate the release-dismissal agreement's legal implications is tantamount to a claim that her attorney did not give her accurate legal advice. It would be unfair to allow her to make this claim without permitting the opposing parties to investigate her attorney's version of the relevant events."; finding waiver of the attorney-client privilege).

The Bankruptcy Court in this district has analyzed the "at issue" doctrine as follows:

> The "at issue" waiver of the attorney-client privilege occurs when the party puts "at issue" some fact which necessarily involves an examination of the attorney's advice [or communication] to the client. *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1419

(11th Cir.1994), *modified on other grounds*, 30 F.3d 1347.

> A party is treated as having waived its privileges if: (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue making it relevant to the case: and (3) application of the privilege would have denied the opposing party access to information vital to his defense. *Small v. Hunt*, 152 F.R.D. 509, 512 (E.D.N.C.1994), citing *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D.Wash. 1975). The "at issue" doctrine is based on notions of fairness and truth-seeking. *Id.; In re Hillsborough Holdings Corp.*, 176 B.R. 223, 239 (M.D.Fla.1994) ("[t]he waiver of the privilege is based upon a premise that when a party's conduct reaches a certain point of disclosure, *fairness* requires that the privilege cease. [citations omitted]. Thus, the law regarding waiver prevents a party from placing some privileged information into evidence for his own benefit, then claiming that disclosure of the remainder of the information is privileged, when the failure to disclose would prove manifestly unfair to the opposing party").

*In re Long Point Road Limited Partnership v. RTC Land Assets Trust*, 1997 WL 33344311, *3-4 (Bkrtcy.D.S.C.1997) (Waites, Bankruptcy J.) (emphasis in original).

■ The court concludes that, to the extent the attorney-client privilege could be deemed to apply to the omission of the Subject Property from the bankruptcy schedules, application of the aforementioned principles results in a waiver of the privilege by Pearson. Through his conduct in these proceedings, Pearson has placed the actions of his bankruptcy law-

---

**3.** When contacted by this court after the expiration of the deadline for responding, counsel for Pearson indicated Pearson has no objection to the Government's motion.

yer at issue. He has taken the requisite "affirmative act" by filing an ancillary petition in this case contesting forfeiture. By filing such petition, Pearson places into controversy the issue of whether he has standing to contest forfeiture (i.e., whether he has the requisite "legal interest" in the Subject Property under 21 U.S.C. § 853(n)(2) and (n)(6)). And application of the privilege in this instance would deny the government access to information relevant to the standing issue, while at the same time allowing Pearson the opportunity to shore up his standing by casting blame on his bankruptcy attorney for the omission, while at the same time prohibiting his attorney the opportunity from responding to the allegations of ineffective representation. The court finds that under these circumstances, principles of fundamental fairness require that the government be afforded the opportunity to inquire of attorney Held regarding this matter, and that he be allowed the opportunity to respond without concern that he may be disclosing client confidences.

For these reasons, it is ORDERED that the government's motion is granted; that the government may inquire of attorney Held regarding the subject of the bankruptcy, whether informally or through formal discovery; and that attorney Held may respond to such inquiries without concern that he may be disclosing client confidences, or otherwise violating the attorney-client privilege.

The period of discovery is extended for 30 days from the date of this order. The Clerk of Court is directed to provide one certified copy of this order to attorney Paul Held.

**IT IS SO ORDERED.**